* * * * * * * * * * *
The Full Commission reviewed the prior Decision and Order, based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Decision and Order, except for minor modifications. Accordingly, the Full Commission affirms the Decision and Order of Deputy Commissioner Glenn with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as: *Page 2 
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Tort Claims Act, N.C. Gen. Stat. § 143-291 et seq.
2. This claim arose out of a collision between a train of the Norfolk Southern Railway Company and a 1982 Datsun automobile operated by the plaintiff, which occurred on January 16, 1989, at approximately 3:45 p.m. in the Town of Elkin.
3. The parties stipulate and agree that the testimony and exhibits admitted at the two prior hearings on September 9, 1998, before Deputy Commissioner Edward Garner, Jr., are to be admitted into evidence and made a part of the record in this matter. These items are:
 a) The transcript of the evidence of first hearing on September 9, 1998, filed on October 4, 2001, and consisting of 91 pages and the following attached exhibits:
 1) Plaintiff exhibits 7 and 60;
 2) Photocopy of stipulated exhibit 10;
 3) Court's exhibit 1; and
 4) Defendant's exhibit 1.
 b) The transcript of the evidence of second hearing on September 9, 1998, filed on October 4, 2001, and consisting of 138 pages and the following attached original exhibits:
 1) Order on final pre-trial conference dated August 19, 1996 exhibit page numbers 1-9); *Page 3 
 2) Stipulated exhibits 1 through 59 (exhibit page numbers 10-158); and
 3) Plaintiff's exhibit 64 (exhibit page number 167).
 c) Plaintiff's Exhibit 49 (contained in volume in the Industrial Commission file labeled "The following exhibits are for Offer of Proof only," pages 106-182).
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was a lifelong resident of Surry County and had lived her entire life in or near the town of Elkin, where the accident occurred.
2. Standard Street, where the railroad crossing accident that is the subject of plaintiff's claim occurred, ran almost parallel with the railroad tracks until it curved sharply to the north to the crossing. On each side of the railroad crossing, the pavement was marked with a standard roadway marking consisting of two large letter R's separated by an even larger X. Immediately prior to the crossing on each side, there was a large white stop line painted on the pavement indicating a point drivers could stop at a safe distance from the tracks if a train was approaching. Also, a railroad crossing cross-buck sign was present on the right-hand shoulder of the street in advance of the railroad track on each side. After the crossing, Standard Street went on to intersect NC 268, a state highway.
3. Standard Street was a part of the municipal road system maintained by the town of Elkin. It was not part of the state highway system maintained by defendant. Defendant had no recorded right of way along NC 268; therefore, its right of way only extended to the edge of the pavement. At intersections, the right of way followed a straight path along where the edge of the state *Page 4 
highway would have been if there had been no intersecting roadway. The site of plaintiff's accident on Standard Street was at least 128.5 feet from the intersection, and 128.5 feet outside of defendant's right of way.
4. Plaintiff was very familiar with the Standard Street railroad crossing and the intersection with NC 268. She knew that the railroad track was there and that from time to time a train would pass through town. Plaintiff knew that a train came through town about once a week, usually in the daytime. Prior to the accident, she had driven across the railroad crossing numerous times and had traversed this crossing in vehicles with other drivers on numerous occasions.
5. On the day of the accident, plaintiff was driving with her radio on. While she was stopped for a signal light on Standard Street at an intersection with Bridge Street, a train whistle blew twice and a crossing arm came down across Bridge Street to her left. After the light changed, plaintiff proceeded east on Standard Street. As she went through the curve before the railroad crossing, she slowed down. She hit her brakes again just before driving onto the tracks into the path of the oncoming train. The train horn blew again at about the time plaintiff was hit.
6. The train, which was on the southernmost of the two sets of tracks at the crossing, the set of tracks closest to plaintiff's vehicle, hit plaintiff's car at about 3:30 p.m. The view to the left (the west) was clear and visible as the train approached from that direction with nothing to block a motorist's view. The train was clearly visible from vehicles near the crossing.
7. Plaintiff testified she was not able to remember the accident.
8. Plaintiff now alleges that she was distracted by a stop sign near the tracks. A stop sign was located 17 feet north of the northern most railroad track rail at the Standard Street crossing. The center of southernmost track, the site of plaintiff's accident, was 38.5 feet from the sign. The stop sign *Page 5 
was located about ninety to one hundred feet south of the right of way of NC 268, well outside of defendant's jurisdiction.
9. The stop sign was made by Correctional (Prison) Enterprises with a date of manufacture of 3/86. It could have been purchased by the state, the town of Elkin, or other local government. The sign did not have the vandal-proof sticker that would have been on the back if it had been put up by defendant. Such a sticker is impossible to remove without leaving a significant mark. There was no such mark on the sign.
10. On Standard Street, the Town of Elkin had the sole responsibility for maintenance of the street, including all signs, traffic control devices, and pavement markings, for all advance warning signs and pavement markings related to the railway crossing, and for keeping the roadway right of way clear. The railroad company had responsibility for the erection and maintenance of the crossing cross buck signs at the tracks, and any supplemental signs on the cross buck posts such as "number of track" signs.
11. The testimony of the named employee, Wayne Atkins, who was defendant's District Engineer responsible for Surry County, was that the sign was not put up or maintained by defendant.
12. Carl McCann, defendant's Division Traffic Engineer for the division including Elkin from 1972 to 1989, testified that his staff was responsible for signs on state highway rights of way in the area, that neither he nor his staff installed the stop sign on Standard Street, that there was no history of accidents at the intersection of NC 268 and Standard Street, that there was that there was no indication that the intersection was hazardous, that there were no citizen complaints or requests from the town about the location, that normally signs on town streets were the town's responsibility, and that he had found no "ordinance," a state record of the sign. Even if there had been such a document recording the sign, it would not tell who installed the sign. Thus, the town could have installed the sign. *Page 6 
13. There was no evidence that the stop sign was placed, installed, or maintained by defendant or its named employees, Wayne Atkins or Harold Steelman, or any other officer, employee, agent, or involuntary servant of defendant. Normally towns put up stop signs on town streets. This sign was located on the right of way of a street maintained by the town of Elkin. The town has since replaced the stop sign with another one at the same site and has placed at least one other stop sign to control the intersection of a town street and a state highway. The Standard Street stop sign has been in place for at least forty years.
14. There was no evidence that defendant has ever received any complaints or reports of any problems or accidents at the intersection of Standard Street and NC 268.
15. There was no evidence of any accidents at the intersection of Standard Street and NC 268, or of any other accidents allegedly attributable to the placement of the stop sign.
16. Defendant had no responsibility to investigate the stop sign, which was not on its right of way.
17. There was no evidence that defendant owed a duty to plaintiff as to the placement, installation, or maintenance of the stop sign.
18. Dr. Ellis King testified that, under the applicable guidelines of the Manual on Uniform Traffic Control Devices, a stop sign may be warranted at the intersection of Standard Street and NC 268, it was his opinion the stop sign on Standard Street was too far from the intersection it was controlling. However, Dr. King further testified that the responsibility for the design, placement, operation and maintenance of traffic control devices rested with the government body having jurisdiction.
19. The Full Commission finds that it is uncontroverted that the stop sign was located on a *Page 7 
street over which the town of Elkin had jurisdiction, ninety to one hundred feet outside of defendant's right of way jurisdiction, and there was no evidence that defendant or an officer, employee, agent, or involuntary servant of defendant was responsible for the sign.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. This case was remanded for trial on the issue of negligence. Contributory negligence is not at issue because the Court of Appeals upheld the prior full Commission conclusion that plaintiff was not contributorily negligent. Norman v. Department of Transportation,161 N.C. App. 211, 212, 224, 588 S.E.2d 42, 44, 51 (2003); rev.dismissed, 358 N.C. 235, 595 S.E.2d 153, rev. denied, 358 N.C. 235,595 S.E.2d 153, cert. denied, 358 N.C. 545, 599 S.E.2d 404 (2004).
2. The State is liable in tort only as provided in the Tort Claims Act. Nello L. Teer Company v. State Highway Commission, 265 N.C. 1,143 S.E.2d 247 (1965). Plaintiff has the burden to prove all elements of negligence on the part of an officer, employee, involuntary servant, or agent of defendant. See Ayscue v. Highway Commission, 270 N.C. 100,153 S.E.2d 823 (1967); N.C. Gen. Stat. §§ 143-291, 143-297.
3. To recover on a negligence claim, a plaintiff must allege and prove that a plaintiff was owed a certain duty, that the duty was breached, and the breach proximately and foreseeably caused the plaintiff's injury. Bolkir v. NCSU, 321 N.C. 706, 365 S.E.2d 898 (1988).
4. N.C. Gen Stat. § 20-158(a), which authorizes the defendant to erect stop signs at intersections with State highways, does not give rise to a duty on the part of the defendant. Norman, *Page 8 161 N.C. App. at 217-18, 588 S.E.2d at 47-48.
5. The authority and control over non-state highways and to control railroad crossings on city streets falls on local town authorities. N.C. Gen. Stat. §§ 20-158(a), 160A-296, 160A-298.
6. Unless a stop sign was within the right-of-way of N.C. 268, defendant did not have an obligation to inspect for and remedy an improperly placed sign. Norman, 161 N.C. App. at 219, 588 S.E.2d at 48.
7. Defendant cannot be held liable for failing to discover a defective sign without a finding that the sign was within the State right-of-way.Norman, 161 N.C. App. at 220, 588 S.E.2d at 49. Because the stop sign near the scene of plaintiff's accident was outside the State right-of-way and was, thus, outside the jurisdiction and control of defendant, the plaintiff has failed to offer evidence tending to show that defendant owed a duty to plaintiff or that defendant breached such duty. Id. and Bolkir v. NCSU, 321 N.C. 706, 365 S.E.2d 898 (1988).
8. The N.C. Rules of Civil Procedure provide that "[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. N.C. Gen. Stat. § 1A-1, Rule 41(b). Upon a careful review of the facts and the law, the Full Commission finds that the plaintiff has shown no right to relief, and that dismissal is proper. Id.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following: *Page 9 
 ORDER
1. Pursuant to N.C. Gen. Stat. § 1A-1, Rule 41(b), defendant's motion to involuntarily dismiss plaintiff's claim is GRANTED. This dismissal is an adjudication on the merits and is with prejudice. Plaintiff shall recover nothing of defendant.
2. The parties shall bear their own costs.
This 23rd day of October 2006.
 S/__________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/__________________ THOMAS J. BOLCH COMMISSIONER
 S/__________________ DIANNE C. SELLERS COMMISSIONER *Page 1